## A09A0087. BERTHOLF v. THE STATE.
(680 SE2d 652)

ADAMS, Judge.

Charles Keith Bertholf appeals following his conviction for possession of methamphetamine, improper tag, and no proof of insurance. Bertholf initially entered a guilty plea to these charges, but withdrew that plea and was convicted following a jury trial.

The evidence at trial showed that on August 31, 2005, Covington Police Officer Ryan Ralston initiated a traffic stop on a Lincoln Town Car driven by Bertholf because no license plate was displayed on the vehicle. Ralston testified that when he asked for proof of identification, Bertholf produced a Georgia Department of Corrections Iden-

tification Card ("DOC ID card"). Bertholf complied with Ralston's request to exit the car, and Ralston asked him whether he had a driver's license. Bertholf replied that he had a valid driver's license, but that it had previously been suspended for a methamphetamine conviction. In the meantime, Officer John Seabolt and another officer arrived on the scene. Ralston observed that Bertholf's face and body were twitching and the officer could literally see Bertholf's heart beating in his chest. Ralston suspected that Bertholf could be using methamphetamine or some other drug, so he asked for permission to search the car. Bertholf consented.

Meanwhile, Officer Seabolt was observing Donna Bell, who was a passenger in the car, and observed her placing an unknown object in her boot. Bell was asked to exit the car, and the officers found a syringe containing an unknown liquid inside her boot. Ralston then conducted a search of the car's passenger compartment and discovered a spoon covered in a white residue in plain sight on the center console, which based upon his experience, he suspected might be used for shooting up methamphetamine.[1] A further search revealed approximately one and one-half grams of what was later identified as methamphetamine inside the passenger side door panel. The officers observed this substance by looking into an approximately one-inch gap between the door paneling, which was not tightly secured, and the window. Ralston testified that the weather stripping on the window was missing, and with a flashlight, he could see the bag of methamphetamine lying inside the door.

Bell, who was tried jointly with Bertholf, testified that it was her understanding that Bertholf had just purchased the Lincoln Town Car from an acquaintance a short time before the police stopped them, although she did not know with certainty. Bell did not see any spoon on the car's console that day, nor did she notice any defects in the passenger door panel or any methamphetamine inside the door. She also stated when the police were pulling them over, Bertholf gave her the syringe and it was he who pushed it into her boot.

Bertholf testified that he had borrowed the Lincoln Town Car from an acquaintance in order to take it for a test drive to see if he wanted to buy it. The acquaintance was the last person in possession of the car before Bertholf drove it that day. Bertholf said that he was a licensed driver, but did not have his license with him at the time of the stop. He knew that the car had no insurance, but he was unaware that it did not have a license plate. Bertholf said that he suffers from

---

[1] Neither the spoon nor the syringe were taken into evidence or sent to a laboratory for testing. Ralston and Seabolt testified that in order to avoid the risk of biohazards, the Covington Police Department had a policy against taking syringes into evidence absent special circumstances not present in this case.

emphysema and two abnormal lumps in his heart, which have resulted in an irregularly heavy heartbeat. He said he consented to a search of the car because he did not know that there was anything illegal in it; he had no knowledge of any syringe or any methamphetamine.

Bertholf also produced testimony from Jody Watson, the office manager at his place of employment. Watson testified that Bertholf was subject to random drug testing as a condition of his employment. He took 16 drug screens for the company and never tested positive for any drugs. Five of these drug screens occurred during the period of July 2005 to December 2005. The jury found both Bell and Bertholf guilty of possession of methamphetamine and Bertholf guilty of the traffic offenses.

1. Bertholf argues that the trial court erred in allowing his co-defendant, Bell, to use evidence of his withdrawn guilty plea to impeach him at trial. Bertholf filed a motion in limine to preclude either the State or Bell from using such evidence. The trial court initially stated that he would prevent both the State and Bell from addressing the prior plea, but later agreed that Bell's attorney could cross-examine Bertholf on the prior plea if Bertholf testified at trial. Bertholf's attorney then raised the issue of severance, but the trial court stated that he would not sever the trials, stating that once he administered the oath to the jury, issues of double jeopardy attached. The record indicates, however, that the trial judge had not yet administered the oath to the jury, but, in fact, administered it later, just prior to the trial.

After Bertholf testified that he had no knowledge of the syringe or the methamphetamine, Bell's attorney impeached Bertholf's testimony on cross-examination with evidence of his prior guilty plea. Bertholf did not object or move for a mistrial at this time. The trial court gave a limiting instruction at the close of Bertholf's testimony, admonishing the jury to consider this evidence "for purposes of consideration of his credibility as a witness" and not "as direct evidence of his guilt or innocence of the charges for which you are considering before [sic]." Bertholf moved for a mistrial at the close of the evidence in the case "based on the impeachment from the plea transcript violating our client's right to be removed from this trial." The trial judge denied the motion.

Although Bertholf's motion for mistrial in this case was untimely² and he failed to raise a contemporaneous objection,³ he

---

² *Gilliam v. State*, 240 Ga. App. 158, 159 (1) (522 SE2d 766) (1999); *Turner v. State*, 208 Ga. App. 728, 729 (431 SE2d 727) (1993) (motion for mistrial must be made contemporaneously with alleged misconduct).

³ *Bridges v. State*, 279 Ga. 351, 356 (9) (613 SE2d 621) (2005) (failure to make a

nevertheless preserved his right to argue this issue on appeal because he raised it in his pre-trial motion in limine. See *Harley-Davidson Motor Co. v. Daniel*, 244 Ga. 284, 285 (1) (260 SE2d 20) (1979); *Davis v. State*, 289 Ga. App. 526 (1) (657 SE2d 609) (2008) (motion in limine preserves right to argue Confrontation Clause violation).[4] Compare *Smith v. State*, 85 Ga. App. 459, 469 (3) (69 SE2d 281) (1952) (defendant waived objection by failing to make a contemporaneous motion for mistrial or to object to indictment showing withdrawal of prior guilty plea going out with the jury).

Under OCGA § 17-7-93 (b), a defendant may withdraw a guilty plea and plead not guilty "[a]t any time before judgment is pronounced, . . . and the former plea *shall not be admissible as evidence against him* at his trial." (Emphasis supplied.) In applying this rule, this Court noted that "[n]o harm can be done a defendant greater than that of calling to the attention of the jury the fact that he has previously pleaded guilty to the same charge for which he is on trial under a subsequent plea of 'not guilty.' " (Citation and punctuation omitted.) *Shoemake v. State*, 213 Ga. App. 528, 530 (445 SE2d 558) (1994). The Court explained that

> [t]here are some prejudicial errors that can be corrected by instructions and rebukes on the part of the trial court. There are others that such measures only tend to accentuate. . . . An error such as the one here involved belongs to the latter class and . . . only a mistrial could serve to correct it.

(Citation and punctuation omitted.) Id.

In *Shoemake*, the State introduced evidence of the prior plea as direct evidence against the defendant, while in this case a co-defendant introduced the evidence and used it only for purposes of impeachment, with limiting instructions by the Court. But as in *Shoemake*, we conclude that this error was not harmless as "[t]he evidence implicating defendant . . . was not so overwhelming that we can safely conclude that the jury would have been persuaded beyond a reasonable doubt of defendant's guilt, without evidence of [his] plea." 213 Ga. App. at 530. Compare *Dixon v. State*, 268 Ga. App. 215, 218-219 (1) (b) (601 SE2d 748) (2004) (reversal not required

---

contemporaneous objection waived appellate review of alleged error in admitting certain evidence).

[4] See also *Arnold v. State*, 249 Ga. App. 156, 161 (3), n. 15 (545 SE2d 312) (2001) ("[A] motion in limine preserves an issue for appeal without a contemporaneous objection at trial, [but] this rule cannot be invoked to preserve a different, if perhaps related, error.") (citations and punctuation omitted); *Ward v. State*, 238 Ga. App. 540, 542 (2) (519 SE2d 304) (1999) (same).

under harmless error rule where the evidence of guilt was overwhelming).

Although the trial court gave a limiting instruction, the charge was not a model of clarity. The understandable portion of the instruction directed the jury to consider the plea evidence only for purposes of Bertholf's credibility as a witness, but his defense, in fact, turned almost entirely upon his credibility. Bertholf's testimony implied that the drugs belonged to someone else, possibly the car's owner, and that he was unaware of anything illegal in the car. Bell testified, however, that Bertholf placed the syringe in her boot. If the jury did not find Bertholf to be credible, his defense failed. Thus, we cannot say that the improper evidence of his prior plea had no effect on the jury's verdict, and we must reverse.[5]

2. Bertholf also asserts that the trial court erred in allowing the State to improperly introduce evidence of his prior convictions through testimony that he produced the DOC ID card and told the officers that he had a prior methamphetamine conviction. He asserts that such evidence improperly impugned his character by tending to show that he had a criminal propensity. He also asserts that the evidence was in the nature of similar transaction evidence, and that the trial judge should have applied the test under *Williams v. State*, 261 Ga. 640, 642 (2) (b) (409 SE2d 649) (1991), before determining its admissibility. We address this argument as it is likely to come up at any retrial of this case.[6]

Bertholf produced the DOC ID card voluntarily, and volunteered the information about his prior conviction when the officer asked him if he had a driver's license. Thus this evidence was part of the res gestae and was admissible despite its prejudicial nature. See *Roberts v. State*, 282 Ga. 548, 551 (6) (651 SE2d 689) (2007); *Lee v. State*, 280 Ga. 521, 522 (630 SE2d 380) (2006); *Shouse v. State*, 231 Ga. 716, 718 (8) (203 SE2d 537) (1974). "The State is entitled to present evidence of the entire res gestae of a crime . . . even if the defendant's character is incidentally placed in issue." (Citations omitted.) *Corza v. State*, 273 Ga. 164, 166 (2) (539 SE2d 149) (2000).

Ralston testified that he relied upon Bertholf's statement, in

---

[5] The better practice here may have been to try these co-defendants separately, allowing Bell to use the plea for impeachment purposes without any resulting prejudice to Bertholf. Although the trial judge is correct that jeopardy attaches once a jury is sworn, *State v. Johnson*, 267 Ga. 305 (477 SE2d 579) (1996), the record indicates that the jury had not yet been sworn at the time Bertholf first raised the issue. But even if it had, where a defendant consents to a mistrial, "he may not thereafter utilize the mistrial as the basis of a plea of double jeopardy." (Citations omitted.) Id.

[6] This issue, too, was preserved for appeal as it was the subject of a pre-trial motion in limine, which the trial court denied. See *Harley-Davidson Motor Co. v. Daniel*, 244 Ga. at 285 (1); *Davis v. State*, 289 Ga. App. at 526 (1).

combination with other factors such as his appearance and the syringe in Bell's boot, to explain why he asked for permission to search the car. But the State did not seek to use the evidence to show bent of mind, course of conduct or to otherwise establish a propensity for the crime charged; thus the test under *Williams v. State* was not implicated.

*Judgment reversed. Doyle, J., concurs. Blackburn, P. J., concurs in the judgment only.*

DECIDED JUNE 30, 2009.

*Salvatore L. Schiappa III*, for appellant.
*W. Kendall Wynne, Jr.*, District Attorney, *Clint C. Malcolm*, Assistant District Attorney, for appellee.